UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JASON JOVINE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>ABBOTT LABORATORIES, INC. d/b/a ABBOTT SALES, MARKETING and DISTRIBUTION CO., a Delaware corporation, and ABBOTT LABORATORIES d/b/a ABBOTT NUTRITION, an Illinois corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____<br><br>State Case No. 50 2010 CA 029178<br><br><br><br><br>**CLASS ACTION** |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Abbott Laboratories d/b/a Abbott Nutrition, an Illinois Corporation ("Abbott Laboratories"), hereby removes this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 from the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida to the United States District Court for the Southern District of Florida. The grounds for removal are set forth below.

1. On or about December 3, 2010, Plaintiff Jason Jovine ("Jovine") commenced this action by filing a Summons and Class Action Complaint in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida captioned *Jason Jovine, individually and on behalf of all others similarly situated, v. Abbott Laboratories, Inc. d/b/a Abbott Sales, Marketing and Distribution Co., a Delaware corporation, and Abbott Laboratories d/b/a Abbott Nutrition, an Illinois Corporation*, Case No. 50 2010 CA 029178 XXXX MD.

2. Abbott Laboratories was served on December 28, 2010 via personal service.

18166701.2

3. This Notice of Removal is timely because it is filed within thirty days of service of the Summons and Class Action Complaint on Abbott Laboratories. *See* 28 U.S.C. § 1446(b); *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1209 (11th Cir. 2008).[1]

4. Defendant Abbott Laboratories, Inc. d/b/a Abbott Sales, Marketing and Distribution Co. is represented by the undersigned counsel and consents to this Notice of Removal.

5. As required by 28 U.S.C. § 1446(a), attached as Exhibit A are copies of all process, pleadings, orders, and other papers or exhibits filed in the state court.

6. Venue of this removal is proper in the Southern District of Florida under 28 U.S.C. § 1441(a) because the Circuit Court of Palm Beach County, Florida is within the Southern District.

7. Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action will be promptly served upon Plaintiff's counsel, and a Notice of Filing Notice of Removal is simultaneously being filed with the Clerk of the Circuit Court in and for Palm Beach County, Florida. A true and correct copy of this Notice is attached hereto as Exhibit B.

## PLAINTIFF'S COMPLAINT

8. Jovine alleges that he is a citizen of Florida. *See* Compl. ¶ 4; Am. Compl. ¶ 4.

9. Defendant Abbott Laboratories is an Illinois corporation with its headquarters and principal place of business in Illinois. *See* Compl. at ¶ 6; Am. Compl. at ¶ 6.

10. Defendant Abbott Laboratories, Inc. d/b/a Abbott Sales, Marketing and Distribution Co. is a Delaware corporation with its headquarters and principal place of business in Illinois. *See* Compl. at ¶ 5; Am. Compl. at ¶ 5.

---

[1] On January 3, 2011, Jovine filed his First Amended Class Action Complaint ("Am. Compl."). The only change in the Amended Complaint appears to be the addition of one paragraph (¶ 8) and a related footnote (note 1) alleging that Abbott Laboratories' counsel made certain statements concerning the existence of federal jurisdiction in a separate proceeding in the Northern District of Illinois. *See infra* note 2.

11.     Jovine's claims involve Defendants' formulation, design, manufacturing, marketing, advertising, distribution, and sale of various Similac-brand infant formula products which Abbott recalled in September 2010. *See* Compl. at ¶¶ 1, 15-16; Am. Compl. at ¶¶ 1, 16-17.

12.     Jovine alleges that the recalled products were defective in that they "contained beetles and beetle larvae, which if consumed by infant children, could lead to serious health concerns . . . ." Compl. at ¶ 1; Am. Compl. at ¶ 1.

13.     Jovine alleges that he was exposed to Defendants' promotion, advertising, and marketing of Similac and therefore believed that Similac products were safe for consumption by his child. *See* Compl. at ¶ 38; Am. Compl. at ¶ 39.

14.     Jovine alleges that his child "became ill" as a result of consuming recalled Similac. Compl. at ¶ 41; Am. Compl. at ¶ 42.

15.     Accordingly, Jovine alleges that Defendants' marketing and advertisement of Similac was "deceptive." Compl. at ¶ 39; Am. Compl. at ¶ 40.

16.     Jovine asserts claims sounding in common-law negligence (Count I); misrepresentation (Count II); negligent misrepresentation (Count III); breach of express warranty (Count IV); breach of implied warranty of merchantability (Count V); and breach of contract (Count VI) or, in the alternative, unjust enrichment (Count VII). He also asserts a claim, on behalf of the Florida subclass only, under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VIII). *See* Compl. at ¶¶ 50-90; Am. Compl. at ¶¶ 51-91.

17.     Jovine seeks a money judgment against Defendants "for all damages caused by their conduct," Compl. Prayer for Relief ¶ C; Am. Compl. Prayer for Relief ¶ C, "the reasonable value of medical monitoring for [the] infant children" of Jovine and the putative class, Compl. at ¶ 34; Am. Compl. at ¶ 35, disgorgement of "the revenues [Defendants] received for the sale of defective Similac products," Compl. at ¶ 86; Am. Compl. at ¶ 87, restitution of all "monies charged to Plaintiff and the putative Classes for the recalled Similac products," Compl. at ¶

3

45(e); Am. Compl. at ¶ 46(e), "attorneys' fees," Compl. Prayer for Relief ¶ G; Am. Compl. Prayer for Relief ¶ G, and "injunctive relief" under FDUTPA, Compl. Prayer for Relief ¶ B; Am. Compl. Prayer for Relief ¶ B.

18. Jovine's Complaint does not state an amount in controversy, other than to note that it "exceeds the sum of $15,000 exclusive of interest, costs and attorney's fees." Compl. at ¶ 7; Am. Compl. at ¶ 7.

19. Jovine seeks to litigate his claims on behalf of himself and proposed classes as follows:

> **The Class:** All persons in the United States who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010. Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.
>
> **The SubClass:** All Florida citizens who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010. Excluded from the Class [sic] are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

Compl. at ¶ 42; Am. Compl. at ¶ 43.

20. As explained below, this Court has jurisdiction over Jovine's action and it is properly removed to this Court.

18166701.2

## BASIS OF FEDERAL JURISDICTION UNDER
## CLASS ACTION FAIRNESS ACT

21. This action is removable to this Court because federal diversity jurisdiction, 28 U.S.C. § 1332, exists over Jovine's claims pursuant to the Class Action Fairness Act of 2005, Pub L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified in various sections of Title 28 of the United States Code including 28 U.S.C. §§ 1332(d) & 1453.

22. CAFA became effective on February 18, 2005, and applies to any civil action on or after that date. CAFA applies to this action because it was commenced on or about December 3, 2010.

23. Congress enacted CAFA to enlarge federal jurisdiction over proposed class actions. CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (a) the number of proposed class members is not less than 100; (b) any member of the proposed class is a citizen of a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b). As set forth below, all of the requirements for removal are satisfied.

### Class Size

24. CAFA's first requirement, that the proposed class contain at least 100 members, 28 U.S.C. § 1332 (d)(5), is satisfied.

25. Jovine's proposed classes contain "[a]ll persons in the United States who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010." *See* Compl. at ¶ 42; Am. Compl. at ¶ 43.

26. Jovine alleges that "[t]he Defendants have over one million customers who purchased their recalled Similac products." Compl. at ¶ 44; Am. Compl. at ¶ 45.

27. Furthermore, Jovine alleges that "the recall encompasses . . . in excess of five million tubs." Compl. at ¶ 20; Am. Compl. at ¶ 21. It follows as a necessary inference that the

five million tubs that were allegedly recalled were collectively purchased by no fewer than 100 people.

28. In fact, according to Abbott Laboratories' records, as of January 11, 2001, over 100,000 separate households had already returned containers of recalled product directly to the manufacturer. *See* Decl. of Jeff Barton ¶ 8 (Ex. C).

29. Jovine's proposed class therefore contains at least 100 members.

### Minimal Diversity of Citizenship

30. CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2), is satisfied.

31. Jovine alleges that he is a citizen of Florida. *See* Compl. at ¶ 4; Am. Compl. at ¶ 4.

32. Jovine alleges that Abbott Laboratories d/b/a Abbott Nutrition is an Illinois corporation and that its headquarters and principal place of business is in Illinois. *See* Compl. at ¶ 6; Am. Complaint at ¶ 6 . Abbott Laboratories d/b/a Abbott Nutrition is therefore a citizen of Illinois.

33. Jovine alleges that Abbott Laboratories, Inc. d/b/a Abbott Sales, Marketing and Distribution Co. is a Delaware corporation and that its headquarters and principal place of business is in Illinois. *See* Compl. at ¶ 5; Am. Compl. at ¶ 5. Abbott Laboratories, Inc. d/b/a Abbott Sales, Marketing and Distribution Co. is therefore a citizen of Delaware and Illinois.

34. Diversity of citizenship therefore exists between at least one proposed class member and any defendant, satisfying 28 U.S.C. § 1332(d)(2).

35. The complete diversity of citizenship between Jovine and Defendants not only satisfies CAFA's minimal diversity-of-citizenship requirement, but also precludes application of the "local controversy" or "home state" exceptions of 28 U.S.C. §§ 1332(d)(3) and (d)(4).

18166701.2

### Amount in Controversy

36. CAFA's third requirement, that the aggregate amount in controversy exceed $5 million exclusive of interest and costs, 28 U.S.C. § 1332(d)(2), is satisfied. Although Defendants dispute liability and damages, Jovine's claims for relief on behalf of himself and his proposed classes, if granted, would exceed $5 million. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) ("If a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." (ellipsis in original) (internal quotation marks and citation omitted)).

37. Jovine seeks disgorgement/restitution, compensatory damages, the costs of future medical monitoring, attorney's fees, and injunctive relief. *See* Compl. at ¶¶ 34, 86, Prayer for Relief ¶¶ B-G; Am. Compl. at ¶¶ 35, 87, Prayer for Relief ¶¶ B-G.

38. Jovine seeks restitution of all "monies charged to Plaintiff and the putative Classes for the recalled Similac products," Compl. at ¶ 45(e); Am. Compl. at ¶ 46(e), as well as the return of all "revenues [Defendants] received for the sale of defective Similac products." Compl. at ¶ 86; Am. Compl. at ¶ 87.

39. Jovine equates the "defective" products with the over "five million tubs" of Similac that were recalled. Compl. at ¶¶ 15, 18, 20, 28, 36; Am. Compl. at ¶¶ 16, 19, 21, 29, 37.

40. The purchase price for each unit of product subject to the recall ranges from $3.00 to $29.99. *See* Barton Decl. at ¶ 10.

41. Since no recalled product had a purchase price below $3.00, the total amount of "monies charged to Plaintiff and the putative Classes for the [five million] recalled Similac products," Compl. at ¶ 45(e); Am. Compl. at ¶ 46(e), can be no less than $15,000,000.

42. In fact, the average purchase price of the containers of product that more than 100,000 households had returned directly to Abbott for a refund as of January 11, 2011 is $20.13. *See* Barton Decl. at ¶ 10. Assuming the average purchase price of *all* recalled

containers of product is roughly the same as the average purchase price of the recalled containers that have been returned to Abbott so far, the total amount of "monies charged to Plaintiff and the putative Classes for the [five million] recalled Similac products," Compl. at ¶ 45(e); Am. Compl. at ¶ 46(e), is approximately $100,650,000.

43. The Complaint thus seeks restitution of an amount far in excess of $5 million. Therefore, CAFA's aggregate amount-in-controversy requirement is met without even considering any of Jovine's requested relief other than restitution.

44. With respect to compensatory damages, Jovine alleges that consumption of beetles in Similac formula "could lead to serious health concerns, including gastrointestinal problems, diarrhea and vomiting." Compl. at ¶ 1; Am. Compl. at ¶ 1.

45. Jovine alleges that multiple "thousands" of children "became ill as a result" of consuming defective Similac. Compl. at ¶ 41; Am. Compl. at ¶ 42.

46. Assuming very conservatively that each child who "became ill" and/or a parent was entitled, on average, to $100 in damages (including out-of-pocket medical expenses and damages for pain and suffering), and that "thousands" means only *two* thousand – the lowest possible number that could still qualify as "thousands" (plural) – the resultant amount of compensatory damages would add an additional $200,000 to the amount in controversy.

47. However, if it were instead assumed that *ten* thousand children "became ill" – i.e., one percent of the children of the "over one million customers . . . [who allegedly] purchased the[] recalled Similac products" – the resultant amount of compensatory damages in controversy would rise to $1,000,000.

48. And if the average compensatory damages award recovered by these ten thousand children were $500, instead of merely $100, the jurisdictional threshold of $5,000,000 would be reached based on compensatory damages alone.

49. Jovine's requested medical-monitoring relief, if awarded, would add significant further sums to the amount in controversy. If each of the alleged "one million" purchasers of

18166701.2

recalled Similac products was awarded, on average, more than $5 in future medical-monitoring expenses for the "early detection" of "gastrointestinal and other health related problems due to the consumption of Similac," Compl. at ¶ 34; Am. Compl. at ¶ 35, the jurisdictional threshold would be surpassed based on this relief alone.

50.  Jovine's requested injunctive relief, if awarded, would add significant further sums to the amount-in-controversy in terms of the value of such relief to the putative class members. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." (citation omitted)).

51.  Jovine's request for attorney's fees, if awarded, would also add significant further sums to the amount in controversy.

52.  Therefore, preponderance of the evidence establishes that Jovine has alleged a class-wide aggregate amount in controversy that easily exceeds $5 million.[2]

53.  For all of the foregoing reasons, this action is properly removed to this Court.

WHEREFORE, Defendant Abbott Laboratories d/b/a Abbott Nutrition respectfully removes this action from the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (Case No. 50 2010 CA 029178 XXXX MD), to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

---

[2] Jovine's First Amended Class Action Complaint attempts to frustrate removal by alleging that "Defendants contend that federal district courts lack subject-matter jurisdiction over this case because purportedly 'it is just not plausible' that over $5,000,000 is in controversy . . . ." Am. Compl. ¶ 8. This quotation mischaracterizes comments made by counsel during an October 26, 2010 hearing in another case premised on the recall at issue here. *See Kiely v. Abbott Laboratories, Inc.*, No. 10-cv-6694 (N.D. Ill.). When viewed in context, it is clear that the quoted words convey the opinion of counsel for Abbott Laboratories in that case on the likelihood of the *Kiely* plaintiff's ultimate recovery, rather than counsel's opinion on the amount in controversy as alleged on the face of the *Kiely* complaint. Moreover, even if counsel *had* taken the position that it was "not plausible" that more than $5 million was in controversy in the *Kiely* proceeding – *as of October 26, 2010*, and based *solely* on the face of the complaint – such a position is entirely consistent with Abbott Laboratories' position advanced herein. In particular, the attached Declaration of Jeff Barton, which is based on facts known to Abbott Laboratories *as of January 11, 2010*, adds significant factual support for removal beyond the allegations on the face of either the *Kiely* complaint or the pleadings in the instant case.

18166701.2

Respectfully submitted,

*Penelope A. Dixon*

Penelope A. Dixon (FBN 0335680)
Email: pdixon@carltonfields.com
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard (33607)
Post Office Box 3239
Tampa, Florida 33601
Telephone:   (813) 223-7000
Facsimile:   (813) 229-4133
Attorneys for Abbott Laboratories, Inc. and Abbott Laboratories

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 27, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified.

By: *Penelope A. Dixon*
     Attorney

10

18166701.2

## SERVICE LIST

*Jason Jovine v. Abbott Laboratories, Inc., et al.*
Case No.: -------
United States District Court, Southern District of Florida

David P. Healy
Law Offices of David. P. Healy, P.L.
dhealy@dhealylaw.com
2846-B Remington Green Cir.
Tallahassee, Florida 32308
Telephone: (850) 222-5400
Facsimile: (850) 222-7339
Attorneys for Plaintiff Jason Jovine

*Via U.S. Mail*

18166701.2