UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-CV-80111-COHN/SELTZER

JASON JOVINE, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

ABBOTT LABORATORIES, INC. d/b/a
ABBOTT SALES, MARKETING and
DISTRIBUTION CO., a Delaware
corporation, and ABBOTT LABORATORIES
d/b/a ABBOTT NUTRITION, an Illinois
corporation,

    Defendants.
_____/

## ORDER DENYING MOTION TO REMAND

**THIS CAUSE** is before the Court on Plaintiff's Motion and Memorandum of Law in Support of Motion to Remand [DE 7] ("Motion to Remand"). The Court has reviewed Defendant Abbott Laboratories d/b/a Abbott Nutrition's Notice of Removal [DE 1], the Motion to Remand, Defendant's Opposition [DE 10], Defendant's Reply in Support of Motion to Remand [DE 11], and is otherwise advised in the premises.

### I. BACKGROUND

Defendant Abbott Laboratories ("Abbott") manufactures, markets, distributes, and sells Similac-brand infant formula products. On September 16, 2010, during an internal quality review at a manufacturing plant in Sturgis, Michigan, Abbott discovered the possible presence of "a common warehouse beetle" in containers of certain finished Similac products. The United States Food and Drug Administration determined that any product that contained beetles posed "no immediate health risk" and no long-term

health concern.  Nonetheless, on September 22, 2010, Abbott recalled 5,000,000 cans of Similac-brand infant formula products.

On December 3, 2010, Plaintiff filed an eight-count class action complaint in Florida state court and served Abbott on December 28, 2010.  The Complaint alleges that Plaintiff's infant child ingested a Similac product and "became ill as a result." Complaint [DE 1-2] ¶ 41.  Thereafter, on January 3, 2011, Plaintiff filed his First Amended Class Action Complaint.  See Amended Complaint [DE 1-2].[1]  The Amended Complaint alleges the same eight counts as the initial Complaint.  Consequently, on January 27, 2011, Abbott removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  See Notice of Removal.  Plaintiff has since moved to remand the case to state court, asserting that the Court lacks subject matter jurisdiction over this controversy.

## II. DISCUSSION

Federal courts are courts of limited jurisdiction.  Federal jurisdiction exists only when a controversy involves either a question of federal law or diversity of citizenship between the parties.  See 28 U.S.C. §§ 1331-1332.  The parties here do not contend that their controversy involves a question of federal law.  Accordingly, this Court has jurisdiction over the instant case only if diversity jurisdiction exists.

Under the umbrella of diversity jurisdiction, the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.),

---

[1] The Complaint and Amended Complaint, along with several other documents, comprise a single exhibit to the Notice of Removal.  See DE 1-2.  The Amended Complaint begins on page 71 of DE 1-2.  Consequently, throughout this Order, the Court cites to "Amended Complaint" rather than the docket entry.

gives district courts subject matter jurisdiction to entertain a "mass action" removed from state court provided that the following four requirements are met: "(1) an amount in controversy requirement of an aggregate of $5,000,000 in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs; and (4) a commonality requirement that the plaintiffs' claims involve common questions of law or fact." Lowery v. Ala. Power Co., 483 F.3d 1184, 1202-03 (11th Cir. 2007); see 28 U.S.C. § 1332(d)(11). The only one of those requirements contested in this case is the first one: whether the amount in controversy exceeds $5 million.

"A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010). "Where, as here, the plaintiff has not pled a specific amount of damages,[2] the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). To establish the amount in controversy by a preponderance of the evidence, "Defendants may introduce their own affidavits, declarations, or other documentation - provided of course that removal is procedurally proper." Pretka, 608 F.3d at 755. Nonetheless, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Id. at 753. Indeed, "[t]he law does not demand perfect

---

[2] Plaintiff alleges only that "[t]he amount in controversy in this case exceeds the sum of $15,000 exclusive of interest, costs and attorneys' fees." Amended Complaint ¶ 7.

3

knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." Id. at 754.

### A. Judicial Estoppel Does Not Apply Here

Plaintiff contends that Abbott should be judicially estopped from contesting jurisdiction in this matter. According to Plaintiff, "[i]n direct contradiction of its arguments here, Abbott successfully argued for the dismissal of [another case based on the same recall] in the Northern District of Illinois." Motion to Remand at 7. In the case in the Northern District of Illinois (hereinafter "Kiely"), the district court judge held a status conference because he was concerned about the amount in controversy. Ultimately, the parties agreed to have the court dismiss the case without prejudice because the court was unconvinced that the Plaintiff had established the requisite amount in controversy. See generally DE 7-1. A review of the transcript from that hearing reflects that counsel for Abbott made representations about the facts, rather than the allegations in the plaintiff's complaint. See id. Abbott, therefore, did not take a position contrary to its position here.

Regardless, principles of judicial estoppel do not apply in the evaluation of federal jurisdiction. See Finley v. United States, 490 U.S. 545, 559 (1989) ("A party . . . cannot create subject-matter jurisdiction - by waiver, estoppel, or the filing of a lawsuit – over a non-Article III case."), superseded by statute, Judicial Improvements Act of 1990, Pub. L. No. 101-650, Title III, § 310(a), 104 Stat. 5089, 5113; see also Ins. Corp. of Ireland, Ltd. v. Companie des Bauxides de Guinee, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); In re Sw. Bell Tel. Co., 535 F.2d 859, 861 (5th Cir. 1976) ("Judicial estoppel principles cannot

4

conclusively establish jurisdictional facts."), rev'd on other grounds, 430 U.S. 723 (1977).

Plaintiff offers no authority to support his judicial estoppel argument  Instead, Plaintiff submits that "Plaintiff's choice of forum is entitled to deference and should not be disturbed simply because it suits Abbott's needs of the moment."  Reply at 11. While the Court recognizes that a plaintiff's geographic choice of forum deserves some deference in certain situations (e.g., a forum non conveniens analysis), that deference cannot defeat a defendant's statutory right to litigate in a federal forum.

Also, even if the Court could apply the doctrine of judicial estoppel to prevent a party from litigating the amount in controversy, Plaintiff has failed to demonstrate that judicial estoppel is appropriate here.  Because federal subject matter jurisdiction in this case is predicated solely on diversity jurisdiction, the Court looks to Florida's law of judicial estoppel.  See, e.g., Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc., 44 F.3d 925, 930 (11th Cir. 1995) ("Because this is a diversity case, the application of the doctrine of judicial estoppel is governed by state law.").  Under Florida law,

> to work an estoppel, the position assumed in the former trial must have been successfully maintained.  In proceedings terminating in a judgment, the positions must be clearly inconsistent, the parties must be the same and the same questions must be involved.  So, the party claiming the estoppel must have been misled and have changed his position; and an estoppel is not raised by conduct of one party to a suit, unless by reason thereof the other party has been so placed as to make it to act in reliance upon it unjust to him to allow that first party to subsequently change his position.  There can be no estoppel where both parties are equally in possession of all the facts pertaining to the matter relied on as an estoppel; where the conduct relied on to create the estoppel was caused by the act of the party claiming the estoppel, or where the positions taken involved solely a question of law.

Blumberg v. USAA Cas. Ins. Co., 790 So. 2d 1061, 1066 (Fla. 2001) (quoting Chase &

Co. v. Little, 156 So. 609, 610 (Fla. 1934)).  First, Abbott's position in Kiely was not clearly inconsistent with its position here, for the transcript from the hearing in Illinois reflects that Abbott's counsel's representations were based not on allegations from a complaint, but from the facts as Abbott believed them.  Indeed, Abbott's argument here, as noted above, is predicated largely on the evidence submitted in the Barton declaration.  Such evidence was not before the court in Kiely, for such evidence did not yet exist.

Moreover, here, Plaintiff obviously was not misled by the position that Abbott purportedly took in Kiely, nor did Plaintiff change his position, nor has Plaintiff relied on Abbott's position so that it would be unjust to allow Abbott to change its position.  Similarly, Abbott did not persuade the court in Kiely to do anything.  Rather, the judge, acting sua sponte, called a hearing to discuss the amount in controversy because he doubted that it had been met.  Consequently, the plaintiff in Kiely agreed to dismissal without prejudice.  DE 7-1 at 11.  Because the court dismissed the action without prejudice, the case did not result in a judgment.  Plaintiff, therefore, cannot invoke judicial estoppel to prevent Abbott from challenging the Court's subject matter jurisdiction in this matter.

### B. Amount in Controversy

The Amended Complaint alleges that Abbott's recall "encompasses more than 2000 lot numbers, and in excess of five million tubs [of infant formula]."  Amended Complaint ¶ 21.  The Amended Complaint further alleges that "Plaintiff and the putative

Classes[3] are entitled to the reasonable value of medical monitoring for their infant children," and that "Plaintiff and the members of the putative Classes would not have purchased the recalled Similac products had they known of their defective condition." Id. ¶¶ 35, 37.  Likewise, the Amended Complaint alleges that "Plaintiff and the members of the putative Classes suffered damages" as a result of Abbott's false statements that "Similac products promote the health and well being of infants and are safe for ingestion by infant children." See id. ¶¶ 56-60.  Based on these allegations – in particular, the allegation that Class members would not have purchased the recalled products had they known of their defective condition – the Court deduces that the amount in controversy is at least the total purchase price of all the recalled Similac products purchased by consumers.

Abbott submitted with its Notice of Removal the Declaration of Jeff Barton [DE 3-1] ("Barton Declaration").  Jeff Barton is the Division Vice President and Controller, Finance, of Abbott Nutrition's Products Division.  Barton Declaration ¶ 3.  The Barton Declaration sets forth that Abbott recalled approximately five million containers of certain Similac-brand infant formula products.  Id. ¶ 6.  Furthermore, the Barton Declaration sets forth that "[a]s of January 11, 2011, the purchase price for each unit of recalled product for which a refund has been sought, according to [more than 100,000

---

[3] The Complaint defines "The Class" as "All persons in the United States who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010." Amended Complaint ¶ 43.  The Amended Complaint defines "The SubClass" as "All Florida citizens who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010." Id.  The Complaint excludes from both the Class and the SubClass (1) any judge presiding over this matter,(2) their family members, (3) Defendants and their related entities, (4) those who file exclusions, and (5) the legal representatives, successors or assigns of excluded persons.  See id.

separate households] submitting refund claims, ranges from $3.00 to $29.99." Id. ¶ 10.

Rather than submit any evidence to cast doubt on Abbott's evidentiary proffer, Plaintiff asserts that the Court cannot rely on the prices in the Barton Declaration. Specifically, Plaintiff argues that the Barton Declaration is useless because it sets forth the prices for products for which a refund has actually been sought rather than the prices of all products subject to the recall. See Reply at 5-6 ("[T]o show the total retail cost of all recalled products at issue, or the average thereof, Abbott need only to review its own records of the lot numbers recalled, determine which products were actually distributed, and of those actually distributed and sold, what their prices were."). The Court finds this argument unavailing.

Because the Court can make reasonable inferences, see Pretka, 608 F.3d at 754, the information in the Barton Declaration leads the Court to infer that the product cost no less than $3.00. When the Court multiplies the $3.00 sales price by the five million containers of product subject to the recall, the amount in controversy triples the jurisdictional requirement. Likewise, even if Abbott sold only one-third of the products subject to recall, Abbott still satisfies the amount in controversy requirement. Moreover, Abbott submitted evidence that at least some of the recalled product cost considerably more than $3.00, thereby putting considerably more than $5 million in controversy.

Lastly, as noted above, Plaintiff seeks the "reasonable value of medical monitoring for [Class members'] infant children." Id. ¶ 34. When the Court adds the cost of such medical monitoring – whatever the cost is[4] – to the cost of the product

---

[4] Based on the undersigned's experience, the Court can reasonably infer that medical monitoring would cost no less than $50. Indeed, the Court expects that

subject to recall, the amount in controversy requirement is easily exceeded.  Abbott, therefore, has established CAFA jurisdiction by a preponderance of the evidence.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion and Memorandum of Law in Support of Motion to Remand [DE 7] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of April, 2011.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

---

even the most basic medical monitoring would cost considerably more than $50 per child.  When the Court multiplies $50 by the 100,000 households that submitted claims directly to Abbott (let alone the cost of medical monitoring for Class members that had not submitted claims when Mr. Barton prepared his declaration), the amount in controversy requirement is satisfied by the cost of medical monitoring alone.  Furthermore, the Court can reasonably infer that more than 100,000 households purchased products subject to the recall.  Likewise, the Court infers that some of the 100,000 households had more than one child that consumed the recalled product.