UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-CV-80111-COHN/SELTZER

JASON JOVINE, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

ABBOTT LABORATORIES, INC. d/b/a
ABBOTT SALES, MARKETING and
DISTRIBUTION CO., a Delaware
corporation, and ABBOTT LABORATORIES
d/b/a ABBOTT NUTRITION, an Illinois
corporation,

      Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Plaintiff's

First Amended Class Action Complaint [DE 4] ("Motion to Dismiss").  The Court has

reviewed the Motion to Dismiss, Plaintiff's Response in Opposition [DE 8] ("Response"),

Defendants' Reply to Plaintiff's Response in Opposition to Abbott's Motion to Dismiss

[DE 9], and is otherwise advised in the premises.

## I. BACKGROUND

Defendant Abbott Laboratories ("Abbott") manufactures, markets, distributes,

and sells Similac-brand infant formula products.  On September 16, 2010, during an

internal quality review at a manufacturing plant in Sturgis, Michigan, Abbott discovered

the possible presence of "a common warehouse beetle" in containers of certain finished

Similac products.  The United States Food and Drug Administration determined that

any product that contained beetles posed "no immediate health risk" and no long-term

health concern.  Nonetheless, on September 22, 2010, Abbott recalled five million cans

of Similac-brand infant formula products.

On December 3, 2010, Plaintiff filed an eight-count class action complaint in

Florida state court and served Abbott on December 28, 2010.  The Complaint alleges

that Plaintiff's infant child ingested a Similac product and "became ill as a result."

Complaint [DE 1-2] ¶ 41.  Thereafter, on January 3, 2011, Plaintiff filed his First

Amended Class Action Complaint.  <u>See</u> Amended Complaint [DE 1-2].[1]  The Amended

Complaint alleges the same eight counts as the initial Complaint: (1) Negligence;

(2) Misrepresentation; (3) Negligent Misrepresentation; (4) Breach of Express Warranty;

(5) Breach of Implied Warranty of Merchantability; (6) Breach of Contract; (7) Unjust

Enrichment; and (8) Violation of the Florida Deceptive and Unfair Trade Practices Act,

Fla. Stat. §§ 501.201, <u>et seq.</u> ("FDUTPA").

On January 27, 2011, Defendants removed the case to this Court pursuant to 28

U.S.C. §§ 1332, 1441, and 1446.  <u>See</u> Notice of Removal.  Defendants have since filed

their Motion to Dismiss.   Plaintiff filed an opposition to the motion and moved for

remand.  The Court denied the motion to remand [DE 12].[2]

---

[1]  The Complaint and Amended Complaint, along with several other documents, comprise a single exhibit to the Notice of Removal.  <u>See</u> DE 1-2.  The Amended Complaint begins on page 71 of DE 1-2.  Consequently, throughout this Order, the Court cites to "Amended Complaint" rather than the docket entry.

[2]  There have been other lawsuits in other District Courts alleging similar claims. On February 4, 2011, the Judicial Panel on Multi-District Litigation denied a plaintiff's motion to centralize the litigation.  MDL Case No. 2211, DE 30.

## II. DISCUSSION

### A. Legal Standard

"[D]istrict courts have a supervisory obligation, 'under [Federal Rule of Civil Procedure] 12(e), to *sua sponte* direct a plaintiff to better plead his complaint when a shotgun complaint fails to adequately link a cause of action to its factual predicates.'" Lampkin-Asam v. Volusia Cnty. School Bd., Case No. 07-12704, 2008 WL 80708, at *2 (11th Cir. Jan. 9, 2008) (quoting Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006)).  Furthermore, under Rule 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Twombly, 550 U.S. at 555.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id.  Accordingly, a well pleaded complaint will survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## B. Shotgun Complaint

Here, the eight-count Amended Complaint incorporates all of the "foregoing allegations" by reference into each subsequent claim for relief.  See, e.g., Amended Complaint at 13.  In other words, Plaintiff has filed a shotgun complaint.  See Ferrell v. Durbin, 311 Fed. App'x 253, 259 (11th Cir. 2009) ("In shotgun style pleading, the complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief.").  The Eleventh Circuit "has had much to say about shotgun pleadings, none of which is favorable."  Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979 n. 54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."); Byrne v. Nezhat, 261 F.3d 1075, 1131 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."); Anderson v. D. Bd. of Trs. of Central Fla. Cmty. Coll., 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").  Consequently, the Court will dismiss Plaintiff's Amended Complaint, in its entirety, for this reason.  Notwithstanding, the Court shall address the merits of the parties' arguments to guide the parties' preparation of prospective pleadings.

## C. Count I: Negligence

"[T]o state a claim for negligence under Florida law, a plaintiff must allege that the [Defendants] owed the plaintiff a duty of care, that [Defendants] breached that duty, and that the breach caused plaintiff to suffer damages."  Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001).  Here, Plaintiff alleges that Abbott "owes a duty to its customers to use reasonable care . . . to ensure that [its infant formula products] are not adulterated, contaminated, injurious to health, or otherwise unfit for human, and particularly, infant consumption."  Amended Complaint ¶ 52.  Plaintiff further alleges that "Defendants breached their duty . . . by failing to exercise reasonable care in the formulation, manufacture, marketing, advertising, distribution, and sale of their Similac products, which according to Defendants' own statements, contained insect parts and larvae."  Id. ¶ 53.  Plaintiff therefore asserts that "[a]s a direct and proximate result of Defendants' failure to exercise reasonable care in the formulation, manufacture, marketing, advertising, distribution, and sale of their Similac products, Plaintiff and the members of the putative Classes suffered damages."  Id. ¶ 54.

Defendants contend that Plaintiff's negligence claim fails because "he has not plausibly alleged that Abbott caused him or his child any damages."  See Motion to Dismiss at 1.  The Amended Complaint alleges that "[i]n or about 2010, Plaintiff purchased Similac infant formula for consumption by his infant child."  Amended Complaint ¶ 40.  "Plaintiff's infant child digested the defective product identified above and, like thousands of others, became ill as a result."  Id. ¶ 42.  Plaintiff does not describe what symptoms his child developed, when his child developed them in relation to consuming Similac products, or why he believes that the symptoms were "a result" of

5

consuming Similac products.  Plaintiff also fails to allege that he saw any beetles or otherwise observed any defects in any Similac product that he purchased.  Thus, the Court has serious doubts that Plaintiff can prove his claims.

Nonetheless, the Court must make accept the allegations in the Amended Complaint as true and draw all reasonable inferences therefrom in the Plaintiff's favor. As noted, the Amended Complaint alleges that Plaintiff's child ingested "defective product."  Id. ¶ 42.  The Court infers that "defective product identified above" refers to infant formula subject to Defendants' recall.  See Twombly, 550 U.S. at 555.  Likewise, the Court accepts as true the allegation that Plaintiff's child became ill as a result of consuming the defective product.  Plaintiff, therefore, has adequately alleged a claim for negligence.

### D. Count II: Misrepresentation

Plaintiff's Amended Complaint presents a count (i.e., Count II) labeled "Misrepresentation," without specifying whether the alleged misrepresentation was negligent or intentional.  Plaintiff, however, also asserts a count labeled "Negligent Misrepresentation" (i.e., Count III).  The Court therefore construes Count II as a claim for intentional misrepresentation.

In Florida, to prevail on a fraudulent misrepresentation claim, a plaintiff must prove each of the following elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985) (citing Huffstetler v. Our Home Life Ins. Co., 65 So. 1 (Fla. 1914)).

6

Plaintiff alleges that "[t]hrough their marketing materials and advertising campaigns, Defendants represented to Plaintiff and the members of the putative Classes that Similac products promote the health and well being of infants and are safe for ingestion by infant children."  Amended Complaint ¶ 56.  Plaintiff further alleges that "[t]hose statements were false, and at the time the statements were made Defendants knew or should have known of their falsity."  Id. ¶ 57.  Accordingly, Plaintiff alleges that Defendants intended Plaintiff to rely on the false statements and that Plaintiff indeed relied on those false statements by purchasing Similac products.  Id. ¶¶ 58-59.

Because Plaintiff alleges that "Defendants knew or should have known" of the falsity of their representations, see id. ¶ 57 (emphasis added), Plaintiff has failed to state a claim for intentional representation.  Stated differently, the alleged fact that Plaintiff "should have known" about the truth or falsity of a representation cannot form the basis of an intentional misrepresentation claim.  See Rand v. Nat'l Fin. Ins. Co., 304 F.3d 1049, 1052 (11th Cir. 2002) (holding, under Florida law, that trial court erred when it instructed jury that the plaintiff could prevail in an intentional fraud claim by proving the defendant "should have known" the falsity of its statement).

### E. Count III: Negligent Misrepresentation

Under Florida law, to establish negligent misrepresentation, a plaintiff must prove

> "(1) [a] misrepresentation of material fact; (2) the representor . . . ma[d]e the representation without knowledge as to its truth or falsity, or . . . under circumstances in which he ought to have known of its falsity; (3) the representor . . . intend[ed] that the misrepresentation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation."

Souran v. Travelers Ins. Co., 982 F.2d 1497 (11th Cir. 1993) (quoting Hoon v. Pate Constr. Co., Inc., 607 So. 2d 423, 427 (Fla. Dist. Ct. App. 1992)).

Plaintiff alleges that "[t]hrough their marketing materials and advertising campaigns, Defendants represented to Plaintiff and the members of the putative Classes that Similac products promote the health and well being of infants and are safe for ingestion by infant children." Amended Complaint ¶ 62. Plaintiff further alleges that "[t]hose statements were false, and at the time the statements were made Defendants knew or should have known of their falsity or, at the very least, acted with negligence and carelessness in ascertaining the truth of their false statements." Id. ¶ 63. Specifically, Plaintiff alleges that because "the Similac products at issue in this Complaint contained pieces of beetles and beetle larvae," Defendants' representations about the qualities of Similac products were false. See id. Plaintiff further alleges that Defendants intended for Plaintiff to rely on their false statements and thereby purchase Similac products for consumption by infant children. See id. ¶ 64. Similarly, Plaintiff alleges that he "justifiably relied on Defendants' false statements by purchasing Similac products." Id. ¶ 65.

Defendants contend that Plaintiff's Amended Complaint fails to allege a misrepresentation of a material fact. See Motion to Dismiss at 2. The Court disagrees. As set forth above, Plaintiff alleges that Defendants represented that "Similac products promote the health and well being of infants and are safe for ingestion by infant children." Amended Complaint ¶ 62; see also id. ¶ 15 ("Similac's packaging also represents that it is safe for consumption by infants."). Plaintiff further alleges that those representations are false. Id. ¶ 63. Plaintiff, therefore, adequately alleges a

8

misrepresentation of material fact.

However, Plaintiff fails to adequately allege that Plaintiff justifiably relied on Defendants' false statements.  Plaintiff alleges only that he relied on the false statements "by purchasing Similac products."  Amended Complaint ¶ 65.  Plaintiff has it backwards.

Although a consumer may buy a product because he relied on a representation, it does not follow that a consumer relied on a representation because he purchased a product.  Indeed, a consumer may purchase a product for any number of reasons.  Accordingly, the allegation that Plaintiff purchased Similac does not support the inference that Plaintiff purchased Similac because of information he read on the product's label.[3]  Plaintiff, therefore, fails to state a claim for negligent misrepresentation.

## F. Count IV: Breach of Express Warranty

 To plead a cause of action for breach of express warranties under the Florida Uniform Commercial Code, a complaint must allege: (1) the sale of goods; (2) the express warranty;[4] (3) breach of the warranty; (4) notice to seller of the breach;[5] and

---

[3]  Tellingly, Plaintiff never alleges that he actually read the label of the allegedly defective product.  Rather, the Amended Complaint alleges only that "[i]n 2010, Plaintiff was exposed to the promotion, advertising and marketing of Similac products as set forth herein and believed that such products were safe for consumption by his infant child."  Amended Complaint ¶ 39.

[4]  Section 672.313, Florida Statutes, provides in relevant part that

(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the

(5) the injuries sustained by the buyer as a result of the breach of the express warranty.

See Dunham-Bush, Inc. v. Thermo-Air Serv., Inc., 351 So. 2d 351, 353 (Fla. Dist. Ct.

App. 1977).  Here, Plaintiff does not allege that he ever notified Defendants of the

alleged breach of a warranty.  Plaintiff, therefore, has failed to state a claim for breach

of express warranty.  See Gen. Matters, Inc. v. Paramount Canning Co., 382 So. 2d

1262, 1263 (Fla. Dist. Ct. App. 1980).[6]

_____

    affirmation or promise.
    . . .
    (2) It is not necessary to the creation of an express warranty that the seller
    use formal words such as 'warrant' or 'guarantee' or that the seller have a
    specific intention to make a warranty, but an affirmation merely of the
    value of the goods or a statement purporting to be merely the seller's
    opinion or commendation of the goods does not create a warranty.

Fla. Stat. 672.313.

   [5]  Section 672.607(3), Florida Statutes, provides in relevant part that "[w]here a
tender has been accepted: (a) The buyer must within a reasonable time after he or she
discovers or should have discovered any breach notify the seller of breach or be barred
from any remedy."

   [6]  Furthermore, Plaintiff alleges that "Defendants provided Plaintiff and the
members of the putative Classes with written express warranties that Similac products
contained 'clinically proven ingredients' that promote health and well being of infant
children and that are safe for ingestion by infants."  Amended Complaint ¶ 68.  Plaintiff
also alleges that "the packaging of Similac products promotes their use to build
'immune support,' 'strong bones,' and healthy 'brain and eyes.'"  Id. ¶ 14.  Also,
Defendants' marketing materials claim that "[e]ach of the formulas in our line provides
the balance of protein, minerals, and other nutrients that helps give babies a strong
start in life."  Id.  Lastly, without actually quoting any Similac packaging, Plaintiff alleges
that "Similac's packaging also represents that it is safe for consumption by infants."  Id.
¶ 15.
    Plaintiff, however, never alleges that the products he purchased failed to contain
clinically proven ingredients' that promote health and well being of infant children and
that are safe for ingestion by infants.  Likewise, Plaintiff never alleges that the products
he purchased failed to build immune support, strong bones, or healthy brain and eyes,
or that they failed to contain the balance of protein, minerals, and other nutrients that
helps give babies a strong start in life.

### G. Count V: Breach of Implied Warranty of Merchantability

A warranty that "goods shall be merchantable" – i.e, "fit for the ordinary purposes for which such goods are used" – is implied in any contract for the sale of goods if the seller is a merchant with respect to goods of that kind.  See Fla. Stat. § 672.314.  A cause of action for breach of implied warranty of merchantability requires allegations that (1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3) the product was defective when transferred from the warrantor, and (4) the defect caused the injury.  Amoroso v. Samuel Freidland Family, 604 So. 2d 827, 833 (Fla. Dist. Ct. App. 1992).

Here, Plaintiff alleges all of the elements set forth above.  Nonetheless, Plaintiff's claim for breach of the implied warranty of merchantability fails.  "[P]ursuant to Florida law, 'a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity.'"  Brophy v. DaimlerChrysler Corp., 932 So. 2d 272, 274 (Fla. Dist. Ct. App. 2005) (quoting Cerasani v. Am. Honda Motor Co., 916 So. 2d 843 (Fla. Dist. Ct. App. 2005) and Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005)).  Here, Plaintiff fails to allege that he was in privity with Defendants.  Plaintiff, therefore, has failed to state a claim for breach of the implied warranty of

---

Stated differently, even if Defendants' products contained beetle parts and beetle larvae, it does not follow that the recalled products failed to contain other ingredients that promote health and well being of infant children and that are safe for ingestion by infants.  Thus, the only express warranty that Defendants even conceivably breached, based on the allegations in the Amended Complaint, is the warranty that Similac "is safe for consumption by infants."  As set forth in detail above with respect to Plaintiff's negligence claim, Plaintiff alleges that he gave his child Similac and his child "became ill as a result."  Amended Complaint ¶ 42.  Nonetheless, as explained above, Plaintiff has failed to state a claim for breach of express warranty because he does not allege that he ever notified Defendants of the alleged breach of a warranty.

merchantability.

### H. Count VI: Breach of Contract

To state a claim for breach of contract under Florida law, Plaintiff must allege: (1) a valid contract, (2) a material breach, and (3) damages. Merin Hunter Codman, Inc. v. Wackenhut Corrs. Corp., 941 So. 2d 396, 398 (Fla. Dist. Ct. App. 2006). A valid contract requires offer and acceptance. Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1290 (11th Cir. 1998) ("[F]or a valid contract there must be an offer by one party to another and an acceptance of the offer by the party who received it.").

Plaintiff alleges that he "entered into valid and enforceable contracts with Defendants for the purchase of Similac products, which Defendants represented would promote the health and well being of infant children and were safe for human consumption." Amended Complaint ¶ 80. Plaintiff's allegation is merely a legal conclusion couched as a factual allegation.[7] Pursuant to Twombly and Iqbal, such an allegation cannot support a cause of action. Indeed, in light of the allegations that Plaintiff is an ultimate consumer and Abbott is a manufacturer, the Court finds it implausible that Plaintiff entered into a contract with Defendants.

_____

[7] Defendants contend that Plaintiff's breach of contract claim fails for the same reason that Plaintiff failed to state a claim for breach of the implied warranty of merchantability (i.e., failure to allege privity). Motion to Dismiss at 11. Plaintiff responds that "Abbott incorrectly asserts that Plaintiff was required to plead privity with Abbott in order to maintain its claims based in law. As shown above, Abbott is incorrect." Response at 11 n. 8. To the contrary, Plaintiff is incorrect.

"The term 'privity' is a word of art . . . used to describe the relationship of persons who are parties to a contract." Baskerville-Donovan Eng'rs, Inc. v. Pensacola Executive House Condo. Ass'n, 581 So. 2d 1301, 1303 (Fla. 1991). Although certain parties who are not in privity to a contract may sue for breach of contract (e.g., third party beneficiaries), Plaintiff does not contend that he was a third party beneficiary of a contract that another party executed with Defendants.

12

Regardless, Plaintiff never alleges that he made any offer to Defendants. Likewise, Plaintiff never alleges that Defendants made an offer to Plaintiff. Because Plaintiff alleges no facts that show one party made an offer to the other, let alone that the other party accepted the offer, Plaintiff has failed to plead facts that raise his right to relief for a breach of contract claim beyond the speculative level.

## I. Count VII: Unjust Enrichment

Unjust enrichment is an equitable doctrine. "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd., 329 F.3d 1241, 1245 n.3 (11th Cir. 2003). The doctrine applies only where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. See Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp., 899 So. 2d 1222, 1227 (Fla. Dist. Ct. App. 2005).

Here, the Court must dismiss Plaintiff's claim for unjust enrichment because he does not lack an adequate legal remedy. See Prohias v. Pfizer, Inc., 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) ("Prohias II") (dismissing unjust enrichment claim premised upon misrepresentations about a product's qualities) (citing Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy.")). Plaintiff, in his unjust

13

enrichment claim, seeks recovery for the exact same wrongful conduct as in his other claims.  Thus, if Defendant was negligent in the manufacture, distribution, etc. of its product, and Plaintiff was damaged by that negligence, then Plaintiff has a remedy at law as a properly pled claim under Florida law.  See Prohias II, 490 F. Supp. 2d at 1236 (citing Am. Honda, 390 F. Supp. 2d at 1178).  Likewise, if Abbott misrepresented the nature of its product and Plaintiff relied on that misrepresentation to his detriment, or if Abbott otherwise employed a deceptive or unfair trade practice that caused Plaintiff damages, see section II.J, infra, then Plaintiff has a remedy at law as a properly pled claim under Florida law.  In other words, although a plaintiff ordinarily may plead in the alternative, here, if Plaintiff cannot prevail with his available legal remedies, he cannot prevail on his unjust enrichment claim.

### J. Count VIII: FDUTPA

The FDUTPA is a creature of Florida law.  The Supreme Court of Florida has not set forth the elements of a FDUTPA claim. The decisions of the Florida District Courts of Appeal, therefore, guide this Court's analysis.  See Fla. Family Policy Council v. Freeman, 561 F.3d 1246, 1256 (11th Cir. 2009) (citing Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir. 1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.")).  With that rule in mind, the Court turns to the FDUTPA claim.

The Court finds Judge Padavano's opinion in Davis v. Powertel, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000), instructive.  In Davis, Judge Padavano recognized that

the Florida Deceptive and Unfair Trade Practices Act provides a cause of action "against a party who has engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' but it does not define the elements of such an action." Id. at 974 (citing § 501.204(1), Fla. Stat. (1999)).  "Instead, the statute provides that the Florida courts must give 'due consideration and great weight' to Federal Trade Commission and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C § 45(a)(1).  See § 501.204(2), Fla. Stat. (1999)." Id. Federal decisions provide that "a deceptive practice is one that is 'likely to mislead' consumers." Id. (citing In re Int'l Harvester Co., 104 F.T.C. 949 (1984); In re Cliffdale Assocs., Inc., 103 F.T.C. 110 (1984); Sw. Sunsites, Inc. v. FTC, 785 F.2d 1431 (9th Cir. 1986)).  According to Judge Padavano, however, "this standard does not require subjective evidence of reliance, as would be the case with a common law action for fraud." Id.; see also State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc., 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); Latman v. Costa Cruise Lines, N.V., 758 So. 2d 699 (Fla. Dist. Ct. App. 2000) ("It is sufficient if a reasonable person would have relied on the representations."). Thus, in a FDUTPA action "the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a

consumer acting reasonably in the same circumstances."  Id.[8]

Here, Plaintiff alleges that "Defendants violated the FDUTPA by formulating, manufacturing, marketing, advertising, promoting, distributing, and selling defective Similac products to Plaintiff and the other members of the SubClass for consumption by their infant children."  Amended Complaint ¶ 90.  Plaintiff further alleges that "Defendants knew or should have known that those products contained insect parts and larvae, which can cause serious health problems in infant children who consume them, including, but not limited to, diarrhea, vomiting and gastrointestinal discomfort."  Id. Plaintiff, however, does not explain how selling a defective product, in and of itself, is a deceptive trade practice.  Ostensibly, it would not be a violation of FDUTPA to sell a broken-down car or an inoperable computer provided the seller did not misrepresent the items' qualities to the seller.

Instead, Plaintiff asserts that

Plaintiff alleges both fraudulent conduct (e.g. Abbott's intentional and/or negligent marketing, advertising, and promotion of its Similac-brand infant formulas as safe for infant consumption, despite the fact that they were not) as well as unfair or unlawful conduct (e.g. Abbott's failure to recall its defective Similac products for nearly a week after discovering that they were contaminated and unsafe for human consumption).

Response at 16.[9]

---

[8]   A recent Eleventh Circuit opinion, Fitzpatrick v. General Mills, Inc., – F. 3d –, 2011 WL 1103005 (11th Cir. Mar. 25, 2011), supports this analysis.

[9]   The Court is confused by the first portion of Plaintiff's argument.  First, Plaintiff contends that he has demonstrated fraud by alleging "intentional and/or negligent" conduct, but it does not follow that negligent conduct constitutes fraud.  Second, Plaintiff appears to argue that fraudulent conduct is necessarily a deceptive and unfair trade practice and therefore constitutes a FDUTPA violation.  Plaintiff offers no authority for that argument.  The Court need not address this implicit argument, however, for

Regarding the second portion of Plaintiff's argument (i.e., that Defendants

engaged in "unfair or unlawful conduct," by waiting to "recall its defective Similac

products for nearly a week after discovering that they were contaminated and unsafe

for human consumption"), the Court finds that Plaintiff has adequately stated a claim for

violation of the FDUTPA.  Plaintiff alleges that Similac's label represents that it is safe

for human consumption.  Amended Complaint ¶ 15.  Plaintiff further alleges that the

representation regarding the product's safety for human consumption is false.  See id. ¶

---

Plaintiff has failed to allege a claim of fraud.

     Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading
requirement for claims of fraud.

> Rule 9(b) may be satisfied if the complaint sets forth: (1) precisely what
> statements were made in what documents or oral representations or what
> omissions were made, and (2) the time and place of each such statement
> and the person responsible for making (or, in the case of omissions, not
> making) same, and (3) the content of such statements and the manner in
> which they misled the plaintiff, and (4) what the defendants obtained as a
> consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1370 (11th Cir. 1997)
(quotation omitted).  Plaintiff asserts that his Amended Complaint comports with Rule
9(b).  See Response at 16-17 ("According to the Complaint, Abbott (the 'who')
misrepresented the health benefits and safety of its Similac-brand infant formulas (the
'what') in its marketing and promotional materials related to those products (the 'how'
and 'where') at the time it disseminated those materials and they were viewed by
Plaintiff and the putative class (the 'when').").  The Court disagrees.  Indeed, Plaintiff
has not pled with specificity what representations Plaintiff saw, when he saw them, or
where he saw them.  Rather, as noted above, the Amended Complaint alleges only that
"[i]n 2010, Plaintiff was exposed to the promotion, advertising and marketing of Similac
products as set forth herein and believed that such products were safe for consumption
by his infant child."  Amended Complaint ¶ 39.  This allegation is vague as to what
Plaintiff saw, where he saw it, and when he saw it.  As set forth above, the Amended
Complaint also alleges that Similac's packaging "represents that it is safe for
consumption by infants."  Id. ¶ 15.  Plaintiff, however, quotes no packaging, does not
allege when he saw it, and does not allege where he saw it.  Plaintiff, therefore, has
failed to plead fraud with the requisite specificity.

42 ("Plaintiff's infant child ingested the defective product identified above and, like thousands of others, became ill as a result."). Likewise, Plaintiff alleges that Abbott delayed "almost an entire week before it recalled the defective products on or about September 22, 2010." Id. ¶ 19. Thus, assuming these allegations are true, and taking those allegations in the light most favorable to Plaintiff, Plaintiff has adequately alleged an unfair or deceptive practice.

FDUTPA provides that "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person shall recover actual damages, plus attorney's fees and court costs as provided in Section 501.2105." Fla. Stat. § 501.211(2).

> [T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect-then the purchase price is the appropriate measure of damages.

Rollins, Inc. v. Heller, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984). For the purpose of recovery under FDUTPA, "actual damages" do not include consequential damages. Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1357 (S.D.Fla. 1999) (citing Nyquist v. Randall, 819 F.2d 1014, 1017 (11th Cir. 1987)).

Here, Plaintiff's FDUTPA claim alleges damages in only the most conclusory terms: "As a direct and proximate result of Defendants' violations of the FDUPTA as alleged herein, Plaintiff . . . suffered damages." Id. ¶ 91. Such a conclusory allegation cannot support a claim. The Court, however, draws all reasonable inferences from the allegations in the Amended Complaint.

In the general allegations, Plaintiff alleges that if he had known the product was

18

not safe for human consumption, he would not have bought it.  Id. ¶ 37.  Ordinarily, such an allegation satisfies the damages element of a FDUTPA claim.  See Nelson v. Mead Johnson Nutrition Co., 270 F.R.D. 689 (S.D. Fla. 2010).  Here, however, Plaintiff also alleges that Defendants issued a voluntary recall for the allegedly defective product.  Amended Complaint ¶¶ 16-17.  Plaintiff's own allegations therefore demonstrate that Defendants would return to Plaintiff the money he paid for allegedly defective products.  See id.  Stated differently, Plaintiff cannot plausibly allege that he suffered damages insofar as the amount he paid for the product, for he alleges that Defendants issued a voluntary recall.

To the extent Plaintiff predicates his FDUTPA damages on injury he suffered beyond the purchase price of the product (e.g., damages associated with the alleged illness his infant child experienced), a statutory limitation on such "actual" damages is that FDUTPA "does not apply to [a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3).  Plaintiff, therefore, has failed to state a claim for violation of the FDUTPA.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint [DE 4] is **GRANTED**.  The Amended Complaint is **DISMISSED without prejudice**.  Plaintiff may

file a second amended complaint no later than April 26, 2011.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 12th day of April, 2011.

JAMES I. COHN
United States District Judge

copies to:

counsel of record on CM/ECF